I have a friend here, and he's the court judge, Mark Caldwell. He's a very good man. He's a law officer. He works for the U.S. Department of Social Security. He's still in the D.O. I know, of course, that you're going to be applying for a scholarship, and you're going to be signing up for students, Caldwell. Where are you off to? There are several different cases. I would like to just mention the first two, which are the substance abuse and behavioral conditions. I'm not sure how many of those you're going to run into. And, of course, the youth case. We're going to go ahead and get to those first two. That's fine. Both of which are children under the age of 12 or less. And, of course, with those limitations, we're going to be able to assist you with that. And, of course, you're going to be able to reach this court's order. We're going to get into more technical issues with this one further. Substance abuse and behavioral conditions. We're going to go ahead and get Dr. Davis to assess the location, which we're going to send him to that. There's a location to bring him to court. I believe the constituent at the courthouse was there, and we will send Rachel to reach out to her. And we're going to get decisions in substance abuse and behavioral conditions. I'm sure you all know Dr. Adams will say that Dr. Davis, to be honest, had no evidence of anything that any other student requires specifically to generate in this particular case. And, of course, I'm still saying that the DMJ rationals constituted the first two reasons that the DMJ gave. First of all,  which is according to Fox. Dr. Davis, I'm assuming you saw this at the end about the DMJ rationals. But that is some of the basic reasons you were trying to create these decisions in substance abuse. And there were other reasons. So, sure, the DMJ rations would be rejected because as long as you didn't create these decisions in substance abuse, that was the case. We did also see that there was a combination in the DMJ rational that made things worse. And that was the fact that, in fact, you said something that was a creative decision. You didn't talk about this. You used it on your own. What does it mean to be misrepresenting a student's condition to the agency? There's no reason to say that. Then it comes to what I believe is a very important part of this case. The DMJ said that there was no support for this creative decision to be made. It was both a creative and a compromise. It was both. However, the DMJ and Warren were in favor of the most important decision, and that was in the 60s. And as a result, the DMJ said, no, it's the next step or so. We're going to do a lot better. And I mean, earlier in the case, we were able to do it. Now, it's over expected. But at the end of the day, the DMJ said, ignore it. It's here. But it didn't even exist. And it's also part of the substance abuse. And what else did the DMJ know? As a result of the 60s, the DMJ, as he said, had actually, in the year of 1965, showed that the screws working prior to the war in Egypt, excuse the majority, not the smallest, were stopped. For creative decision, for extrusion, and for abusive policies. And that that was constant irritation of the DMJ. And the DMJ was responsible for what she was describing as these kinds of things, like money, opinion, and intimacy. So, the two most important pieces in this case were ignored, on an illustrative logic, in terms of having an exfoliating relationship with the DMJ. As in this case, I saw his name mentioned by his ALJ. I saw it in this order, as well. The DMJ, Dr. Shah, and Dr. Lee, Dr. Shah, and Dr. Lee, and Dr. Lee, referred for mineral steroid injections. That came in turn to the DMJ, answering, as far as I can see, the recipient, referred for steroid medication, that would also reduce the inflammation. What did the DMJ do then? His characterizing term, as far as I know, is steroid inhibitor procedure. So, Dr. Davis referred to Dr. Hansel as the orthopedic surgeon. He interprets these things, these things, to show these very severe findings. He also refers to Dr. Shah, and Dr. Lee, as there's a series of unfortunate and unsuccessful steroid and mineral injections. So, that's sort of the bottom line, what we have here. Now, these are shared problems. I'm only giving you this pretentious expression, and I don't want to contrast it in any way. And that is, contrary to what it is, we have a long-standing treatment relationship with the world, and that is actually important. So, the presentation that says there's a long-term treatment history, and we have serious issues with that, that part of it is important. But, that is the higher self-content to be considering. And Dr. Davis referred to Dr. Hansel as the orthopedic surgeon who seems to fall off for not being usually in order of conduction. So, he's at the edge, and surely for his research, he will have to throw steroid intrusions in the engine. You know, she didn't really understand what they were. So, there are differences. And so, what he's saying is, of course, in the ERC case, steroid intrusions are not a conservative treatment. You know, that is what he actually said, technology is a conservative treatment. So, at the drug basis, you can assume that, of course, there will be an intervention, and there's the other basis, of course. These are all the successful interventions that are also said to be not conservative. But, there's a lot of limitations on the person who does the steroid. The input I will make here, in terms of the information that I see, is the fundamental problem of seeing these cases over and over and over and over again. The ELK, the ELC is the ELK. They are all doing this.  are all  this. This is true. This is true. This is true. It is true. But, there are also limitations on the ability to    this is the ELK. This is the ELK. And this is the ELK. This is the     This is the ELK. ELK. This is the  This
judges: Schroeder, Reinhardt, Owens